### THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. WALTER DWORECKI, PLAINTIFF IN ERROR.

Argued November 16, 1939—Decided January 11, 1940.

For the defendant in error, *Samuel P. Orlando,* assistant attorney-general.

For the plaintiff in error, *Frank M. Travaline, Jr.*

The opinion of the court was delivered by

CASE, J.   Walter Dworecki was convicted, without recommendation of life imprisonment, in the Camden County Court of Oyer and Terminer of the crime of murder in the first degree committed upon his daughter, Wanda Dworecki, and was sentenced to death.   The judgment is brought before us by writ of error and also on specifications for reversal based upon certification of the entire record.

Plaintiff in error, the defendant in the trial below, argues two points.   The first is that the court, in response to an inquiry from the jury as to whether or not there was authority in any board to modify the sentence that the jury "might impose" by their verdict or the penalty that "might flow" from their verdict, erroneously made this charge:

"The court charges you in respect to that, that there is a Court of Pardons, a court constitutionally constituted.   I

mean by that, provided for by our Constitution. That Court of Pardons has the power to modify, change, reduce, abolish or set aside whatever result the jury may arrive at, whether they fix a penalty of death or life imprisonment. It has the power resident in that court to do that, regardless of the penalty, and that court is constitutionally established."

That language was used, almost *verbatim,* by the trial judge in *State* v. *Barth,* 114 *N. J. L.* 112, 117, in replying to a similar inquiry from the jury. We found that the charge did not constitute reversible error. We are of the same opinion in the instant case.

The second point presented by the appealing defendant is that the verdict of the jury was clearly against the weight of the evidence. Wanda Dworecki, the victim of the murder, was eighteen years of age and of wayward disposition, apparently oversexed and frequently in male company of doubtful morality. At about eighty-thirty on the morning of August 8th, 1939, her dead body was found in a growth of weeds bordering on unimproved lands in the general vicinity of the tennis courts of the city high school. She had been killed the preceding night. The *post-mortem* disclosed that death had been caused by strangulation but that in addition to the throat markings there were head lacerations. Peter Schewchuk had been seen with Wanda Dworecki on the evening of August 7th, 1939. Following the murder he was sought but not found by the police. On August 27th, however, he surrendered to the authorities and confessed that he had killed the girl. In his confession he implicated Dworecki. Dworecki was apprehended and questioned. He made a statement which was taken down stenographically, was admitted in evidence against him at the trial and fills thirty pages of the printed record. Both Dworecki and Schewchuk were indicted for murder. There was a severance for the purposes of trial, and the case against Dworecki was first moved. Dworecki's confession goes into minute detail and is obviously too long for repetition here. But by that statement it was put before the jury that defendant had long been distressed and humiliated by Wanda's loose morals; that he had endeavored, unsuccessfully, to change her habits; that the

situation was becoming such that he feared he would lose his employment because of it; that some months earlier two men, John Popola and Joe Rock, had persuaded him that the only way out was for Wanda to be killed; that they undertook to kill her for the price of $1,000 and that they induced him to take out an additional insurance policy on Wanda's life in the amount of $1,000 to cover that cost; that defendant already had one $1,000 policy; that both of those policies carried double indemnity, that is, that the insurer agreed to pay twice the face amount of the policy if death should result from accident; that Popola and another had accordingly, in the month of April, taken Wanda out in an automobile to perpetrate the crime of murder but that the plan had failed and that Wanda in some way escaped, injured and without clothes, and returned home; that nevertheless Popola and his confederates were constantly urging defendant to permit them to carry out their bargain and were threatening him with personal injury because he demurred; that subsequently he had befriended Peter Schewchuk by taking the latter into his home and that recently the defendant was told that Wanda was pregnant and that Peter was bragging of having had illicit relations with her; that on August 7th defendant charged Peter with this wrongdoing and was met with a denial; that Peter and he then discussed killing Wanda; that defendant agreed to pay Peter $100 for doing the act; that defendant had arranged with Wanda to meet Peter at the corner of Haddon and Kaighn avenues, ostensibly to have Wanda induce Peter to deny the nasty rumors of unchastity, and that when defendant separated from Peter on the evening of August 7th it was with the knowledge that Peter was to go to that location, meet Wanda, and take her out and kill her, and that defendant was to pay him $100 for so doing.

Schewchuk was a witness at the trial. His testimony varied in some respects from the defendant's statement above, but he testified that he had previously been solicited by the defendant to kill Wanda and that on the fatal day he agreed to do so, that the defendant promised to pay him $100 for the act and that defendant arranged to, and did, cause Wanda to be at the corner of Haddon and Kaighn avenues whence

Schewchuk took her to a partially secluded spot and, after some conversation, choked her, hit her over the head with a stone in order to give the appearance of death by accident and listened for the heart beat in order to make certain that she was dead, all in accordance with instructions given him by Dworecki.

From other witnesses it was put in evidence that although, on the evening of Monday, August 7th, 1939, defendant went to his home and evinced surprise that Wanda was not there and that he telephoned the police late that night or early the next morning and reported the girl as missing, he did not pursue the information given him by his daughter Mildred that a neighbor had seen Wanda at eight o'clock standing at the corner of Haddon and Kaighn avenues; that preceding the funeral of the murdered girl he said to a woman friend that she would likely be questioned by the police, and he cautioned her thus: "Don't admit anything, that you know Johnny or Pete;" that to another woman he said, "Probably they will ask you whether you know Peter Schewchuk or Johnny Popola; I want you to say no, you don't know nothing and you don't know them." To yet another woman, a long time acquaintance who was intimate with Peter Schewchuk's sister Lena, he said at his home immediately after the funeral, "Go down to Lena's house. Tell Lena if she knows where Peter is at, for him to run away, because the detectives are looking for him." It was testified by Mildred Dworecki that the defendant had instructed her not to mention "Pete's" name if she was questioned. It further appears that the Metropolitan Life Insurance Company carried two policies on Wanda's life, one of them having been issued in March, 1939, with the defendant as beneficiary, each of them in the face amount of $1,000 with the "double indemnity" feature mentioned above.

Dworecki took the witness stand in his own behalf and denied his guilt and also denied the truthfulness of his statement of confession; but the decision as to where the truth lay was with the jury. The confession, if believed—and the jury was justified in believing it—corroborated the essential facts of defendant's guilt as testified to by Schewchuk; and

the testimony of other witnesses is strongly persuasive of guilty knowledge and of interest in suppressing the truth.

In order to justify the setting aside of a verdict in a criminal case on the ground that it is against the weight of the evidence (*Pamph. L.* 1921, *ch.* 349; *R. S.* 2:195-19), the verdict must so clearly appear to be against the weight of the evidence as to give rise to the inference that it is the "result of mistake, passion, prejudice or partiality" on the part of the jury. *State* v. *Tomaini,* 118 *N. J. L.* 162. We are of the opinion that there was ample evidence upon which to rest the conviction.

We find no error in the record. The judgment is therefore affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 16.

*For reversal*—None.